Five Cisco Systems v. Arista Networks. Good morning, Your Honors. May it please the Court. Kathleen Sullivan for Cisco Systems. The sole issue on appeal is whether— Could you help me understand what's going on here because I found the briefs rather confusing? I'd be happy to, Judge Dyke. If you look at page 10 of your blue brief, there are two boxes here. There's a show hierarchy and a spanning tree hierarchy. And if I understand the analytic section opinion and the charge to the jury, it's agreed that those boxes are not protectable subject matter, right? Independently, Your Honor. What is protectable is the compilation that represents the selection and arrangement of commands across hierarchies. So there's my problem. What is the compilation? Because I, in reading the briefs, can't figure out what it is. The compilation is the selection and arrangement of multi-word commands. Arista has abandoned any attempt to defend the Senza Fair judgment on the grounds of any of the other four compilations. You mean the way the hierarchies are ordered? The way the commands are distributed across the hierarchies. For example, let's go right to an example, Your Honor. If you look at the district court, what I think is really the heart of the district court's JAMAL order at pages A, 10, and 11, the district court refers to some protocol that the district court said might have dictated as external factors the selection and arrangement of commands. So at page 10, for example, the district court refers to the OSPF hierarchy, the Open Shortest Path First hierarchy. Now, sorry, the OSPF, Open Shortest Path First protocol. Now, Your Honor, what Cisco did that was original, and the jury found protected and infringed, is it took a term like OSPF, and it took individual terms in the OSPF glossary, and it decided how to order them across hierarchies. I'm sorry, I'm just not understanding. The show hierarchy itself is unprotectable. So what is the compilation here? The compilation is the combination of multiple, multiple-word commands. So, for example, Your Honor, the combination of various different hierarchies. The combination of different multi-word commands across different hierarchies. Let me, if you read nothing else in our briefs, Your Honor, look at the gray brief, pages 14 to 15, and note 5, and we give you all the evidence there about how we arrange things. 14 to 15, note 5. I promise you, if you go into the record, 14, 15, and note 5, if you go into the evidence on page 15 and note 5, you'll see that what Cisco did is say, okay, there's a protocol out there, it's OSPF, or IGMP, and we distribute it, if you look in footnote 5, as to OSPF, we distribute it across seven different hierarchies. So if you look at our citations there, you're going to see that we put OSPF sometimes as the third word in a command. IPv6, show IP, OSPF, border routers. Sometimes we put OSPF as the second word in a command. Sometimes we put it as the third word, or the second, third, or fourth word in the command. And what we were doing there is we were creating a taxonomy. This is straight out of Oracle versus Google. It's no different from the taxonomy that this court found copyrightable in Oracle versus Google. It's a taxonomy whereby we decide, all right, OSPF has to be somewhere, but our engineers will decide where to put it. It's sometimes put into the IP hierarchy, which starts with the term IP. It's sometimes put into the show hierarchy. Could you maybe explain it using the two hierarchies on page 10 of your blue brief? Sure, Your Honor. So if you see, for example, in the blue brief on page 10, there's a show hierarchy, and you'll find one node takes you to the term spanning tree as the second term within the show hierarchy command. But you can look over in the spanning tree hierarchy, a separate hierarchy, and you can see there that we put the term spanning tree in as the root word. That means that a bunch of nodes come off spanning tree in the spanning tree hierarchy. The originality that the jury found, protectable and infringed, is the fact that we put term like spanning tree sometimes in a hierarchy with a different root word and sometimes as the root word in its own hierarchy. So the choice that is protected here is the choice of arranging and creating taxonomies across different hierarchies. And that was clearly instructed. There's no question here that the case was tried and instructed on the ground that Cisco had to show for infringement, which we did prove and the jury did find, that the selection and arrangement of the multi-word commands was original. Can I ask you about that? At least in one way that I've been thinking about this case, rather a lot turns on whether selection and arrangement are two things that have to be shown to be protectable or not, using that as a shorthand, or whether it's a unitary thing so that the selection and arrangement is original if either the selection or the arrangement is protectable. And it seemed to me that at least the instruction was quite unclear about that or ambiguous about it and even the slightly odd language from the JML opinion is unclear about that. Can you clarify? Absolutely, Your Honor. The instructions are absolutely clear that it's instruction and arrangement. Your Honor, the key instructions are 39 and 61. 39 is the infringement instruction at 12.673. Let me see if I can state this better. In instruction 39, item 1 and item 2 both use the conjunctive phrase selective and arrangement. Right, Your Honor. Why is it not the case that if the selection is protectable, then the selection and arrangement is protectable? So, Your Honor, two points. Selection and arrangement are conjunctive. Cisco, sorry, Arista. There's no singular or plural verb following those. And your brief was extremely careful to avoid, I think, making a selection of the plural or singular verb. And I'm not trying to understand whether this was a matter that everybody understood and you could see that everybody understood it in the trial record, that it was that you had to be both or whether it was just left linguistically unpunctuated. It was absolutely clear it had to be both selection and arrangement. But I agree with you, Your Honor, it's kind of one action by the engineer, but it had to be selection and arrangement, and here's why. 39 and 61, the infringement and the sense of fair instruction, both say selection and arrangement. The district court's filtration order also said at 1338 that there has to be creativity in the selection and arrangement. And at 1345, the filtration order says there has to be selection and arrangement to have protectability. The only ---- What happens if we disagree with you about that? Your Honor, we don't think you can disagree because Arista's waived it. I understand. You can always disagree with me, Judge Dikeman. Let's suppose we do disagree with you and say selection. We still win. Then we still ---- The jury found, could have found infringement just based on selection. Your Honor, if you find that selection alone is enough, you must still reverse because the only selection to which the evidence points is selection of types of commands. If you look at the red brief, Arista comes now on appeal for the first time. It never presented this theory before. And it says what happened here is function dictated the selection of types of commands. We are not claiming to own types of commands. We are claiming to own a particular expression of particular commands in a particular arrangement that becomes a particular compilation. Has I read particularly your gray brief? Yes, Your Honor. Your gray brief, to some extent the blue brief as well, doesn't meaningfully contest the selection even of individual commands, but rather puts, I thought, all of its eggs in the basket of saying how we distributed them across hierarchies, namely arrangement, is what was clearly not dictated by standards or anything but our own creative judgment. Your Honor, let me be clear. We win either of two ways. We certainly win on selection and arrangement of multi-word commands. Arista has effectively abandoned any attempt to defend the district court's ruling that you could find that sends a fair, that there was dictation of the arrangement of commands. So we win if you find selection and arrangement, but we also win if you find selection of the right thing. The selection of the actual multi-word commands together, the selection of the multi-word commands was not dictated by anything in a prior protocol. And my key point here, Your Honor, is to go back to OSPF or IGMP. Yes, we use those terms, those individual terms, but nothing in the protocol. And if you go to the protocol glossaries that the district court cites at A10, you will see that nothing in the protocols told you, well, you have to put OSPF first. It has to be the root word. Or you have to put it before a term it defines. How does what you're now saying square with the Instruction 39 portion that lists 15 items as not protectable, including any single multi-word command? It squares exactly with it, Your Honor. In fact, it's precisely because we can't rely on any single term, any single multi-word command or any single hierarchy, that the jury could have found infringement only by finding we were original in our distribution of the command terms across multiple hierarchies. In other words, let me put it this way. The smallest protectable unit in this case, and therefore the smallest unit that could be eligible for Sen's Affair, has to be a compilation unit.  It has to be bigger than a multi-word command. And it has to span at least two hierarchies. So to go back to OSPF, Your Honor, what I was trying to say to Judge Dyke earlier, is that the district court says, well, look at the OSPF protocol. And look at the place at 51-808 where there's a glossary, appendix 51-808. There's a glossary for OSPF. And there are some terms in there. And then Cisco used those terms. Well, the glossary has the term router. It has the term interface. But nothing anywhere in the OSPF protocol says you have to put them in any order. So in one command, we put router OSPF. In another command, we put show IP OSPF interface. We put interface after OSPF. We put router before it. What nothing in the protocols dictated was the selection or arrangement. Selection or arrangement. We went either way. As long as you don't go with Arista's unacceptable theory, which is a backdoor attempt to overrule Oracle v. Google, that they can win on selection of types of commands. Types of commands are unprotectable ideas. What we're asserting is that the interrelationship that our engineers created among the multi-word commands through a taxonomy structure. Among the hierarchies. Distribution across the hierarchies, Your Honor. Distribution of arrangement. We had to try the case with one hand tied behind our back and we still got an infringement verdict. We were told we could only prove compilations. We couldn't prove originality in multi-word commands. We couldn't prove originality in multi-word commands even though it was conceded by Arista's expert that not a single one of our copied commands existed before we wrote them. In terms of arrangement, there's no claim that there's anything protectable about the arrangement of the various hierarchies compared to each other, right? We absolutely claim there is, Your Honor. We arranged the hierarchies compared to one another. That was what was original. I'm not sure we're communicating. You're saying that the relationship or the arrangement is carrying over different commands from one hierarchy to the other. In the example on page 10, the spanning tree is used in the left-hand hierarchy and also in the right-hand hierarchy and that creates a relationship and that is protectable. But there's no suggestion that the hierarchies themselves in terms of which one comes first or second or third is protected, right? I disagree, Your Honor. The very fact that we created a set of multi-word commands What have you shown about the arrangement in that respect? I didn't see anything in the brief suggesting that the arrangement of the hierarchies in relationship to each other is protectable. Your Honor, there was overwhelming evidence of originality in the arrangement of the hierarchies. What is that evidence? I understand your point about you create a relationship among the hierarchies by using the same terminology here on page 10 between the left-hand and the right-hand hierarchy. There's some overlap. I understand that point. Whether it's sufficient or not, that's another question. I'm trying to understand what apart from that is your claim to the existence of a compilation. The claim to an existence of a compilation is exactly based on Instruction 39. The selection and arrangement of the multi-word commands as a collective, as a compilation. It's undisputed that there were many different ways to arrange multi-word commands. It's undisputed that there were many ways. This is why the jury rejected merger. This is why you really can't find sense if they're based on functionality. There were many ways to do it. What Cisco's engineers did is they decided whether to have a show hierarchy in which they arranged a set of commands beginning show and they popped OSPF into it. But that is not protectable. That decision to have a show hierarchy in the left-hand box here on page 10, that under the section opinion and under the instruction is not protectable. Your Honor, what I promise you will happen when you look at the evidence in our Gray-Reef footnote 5. Let me answer my question. Is that not correct? Your Honor, the individual hierarchy is not protectable under the court's instruction. What is protectable is the simultaneous decision of the engineers to have the hierarchy on the left on page 10 and also to have the hierarchy on the right on page 10. Remember, all that's before you is the Affirmative Defense of Sen's Affair. We won on infringement, and that means all inferences from the verdict go in our favor. Why is infringement also before us? They argued lack of infringement. They argued in one paragraph. Wait, wait, wait. Sorry, Your Honor. It's an alternative ground, right? That's before us, isn't it? Your Honor, barely. There's one paragraph at the back of the red brief, which if that preserves the argument, you still should take all inferences in favor of our verdict on the infringement side. And if you take all inferences in favor of our verdict on the infringement side, there's overwhelming evidence that, first of all, they've conceded at red brief 18 and 59 that they copied 506 of our commands verbatim, and there's overwhelming evidence that the commands we created never existed before we wrote them. Arista's expert conceded that at A12210. So the multi-word commands didn't exist before we wrote them. We weren't allowed to prove that our multi-word commands individually were protected, but we were allowed to show and did, and all inferences should be taken in favor of this verdict, that we originally protectably selected and arranged the interrelationship among our commands across the hierarchies. Your Honor, the district court expressly allowed us to use hierarchies to prove that the compilation of multi-word commands were original. It's in the filtration order at A1339. It was a crucial moment in the trial. Arista, we dropped hierarchies as an independently protectable expression, but Arista conceded that we were allowed to go forward and show that the process for creating commands was related to each command expression's organization in the hierarchies, and that's what we did. We showed that the multi-word commands were created by a creation of a hierarchical structure. We're not allowed to claim any one hierarchy, but we were allowed to claim and we did show, and the jury did agree, that we had created a compilation where the interrelationship of our multi-word commands across hierarchies was protectable and infringed. So, Your Honor, just to go back to the OSPF example for a moment, what's protected? I want to answer Your Honor's question. What's protected is OSPF opened shortest path first. What did our engineers do? They said, well, we need to put OSPF somewhere. Let's put it in the clear hierarchy as the third term, clear IP OSPF neighbor. Let's put it as the second word in the IP hierarchy, IP OSPF network, or IPv6 hierarchy as the second word. Sometimes let's put it as the third word. I understand what you're saying. Why doesn't it convince you? We have this black box jury verdict, and I'm not sure that the jury found infringement based on the theory that you're articulating here today. Well, Your Honor, we have to assume that what the jury found sends a fair corresponds exactly to what the jury found infringed, and we're willing to fight on the grounds that the jury found infringed any significant portion of a protectable compilation and, therefore, that it found sends a fair, any protectable portion of a protectable compilation. But the key point, Your Honor, is it had... But how do I know that the jury found what you're talking about this morning? You assume that the jury did what it was properly instructed to do. There's no contest here to Instructions 39 or 61. And, Judge Taranto, that would be my additional answer to your question about selection and arrangement. Arista did not object to the word and in Instruction 39 and 61. And, in fact, I would refer, Your Honor, to Docket 597 and Docket 603 at pages 50 and 76, respectively. Arista actually proposed that Instruction 33 say in selection and arrangement. I assume those are not in the joint appendix. They're not in the joint appendix, Your Honor, but I add them for completeness. Can I say something? Yes, Your Honor. Way back when you referred to something in the analytic dissection order. Yes, Your Honor. The unitariness or not unitariness of selection and arrangement. Can you point to that? Absolutely, Your Honor. You will find it in two places as relevant here. It's all over the filtration order, but we're just in multi-word command world now. It's in the filtration order at pages 1338 and 1345. 1338 and 1345, yes. I want to be sure I'm precise, Your Honor. So it's at 1338 at line 24. As Cisco argues, the creativity is found in the selection and arrangement. And it's found again at 1345 at line 8, where the district court says, it is the selection and arrangement of the command line expressions into a collection that is protectable. So the case was tried on and. So not, I mean, is. Is. Is protectable. Is is a singular verb. I hear you, Your Honor. Here's how I think we win. I think we win if we're required to show selection and arrangement for protectability because you can't possibly find that any protocol, any functional constraint, or any customer demand required how we arranged our multi-word commands. It just can't be done. ERST has practically waived that on appeal by defending this new theory, that they can win if we were dictated in our selection of types of commands. You can't go with that. Types of commands aren't protectable. We didn't argue for protection of types of commands. So any functional constraint on selecting the type of command can't be sense of fare. So we win if it's selection and arrangement. And ERST has almost conceded that. I'm sure my friend will disagree that they conceded anything. But if you look at the red brief, it's overwhelmingly about selection of types of commands. And that's not an acceptable theory. But, Your Honor, we. I don't understand a type of command to be. What does that mean? A type of command would be something like open shortest path first, an OSPF command. But we could be dictated in needing to implement an OSPF command. My friend likes to refer to knobs. A knob on a television set might execute the volume function. But the copyrightable instructions or design might say loudness, volume, sound, or have a picture of a human ear. Just because you have a type of command doesn't dictate that you use any particular form of expression to implement it. It's not impending that the choice of the particular words here is protectable. Your Honor, expand my example to something with multi-words and an arrangement. All I'm getting at is a type of command is an unprotectable idea. We couldn't have been found. We couldn't have proved infringement based on types of commands. We don't own types of commands. We don't claim to own types of commands. Internet group management protocol, show, display. We don't claim to own a type of command. We claim to own, and the jury agreed with us, that we owned and Cisco verbatim copied literal expressions of our commands and the arrangement whereby we put them together into the taxonomy. But I still have trouble figuring out how you're so sure that that's what the jury found. Well, Your Honor, I'm presuming. You chose a black box verdict, and that's what we have. Your Honor, the jury was instructed in extremely rigorous ways by the district court. The district court wrote a lengthy filtration order. The district court couldn't have gone to more. You're saying that this is the only thing that they could have found. You must presume that the jury found. Is that, I mean, is that, is my statement correct? Yes. The jury must have found it under the instructions. They must have found. A compilation. Originality to lie and what you're talking about this morning. Yes, Your Honor. They have to if you credit that the jury obeyed the court. The court told them, look at instructions 39 and 61. The court told them, Cisco can win only if it proves for present purposes that originality in the selection and arrangement of its multi-word command line expressions. And the court told the jury in instruction 61 that Arista must show at the time Cisco created the user interfaces, external factors other than Cisco's creativity dictated that Cisco select, arrange, organize, and design its original features in the manner that it did. I'm not sure if this is a version of Judge Dyke's question or a different thing, but you haven't contended here, for example, that the jury might have found infringement under item 2, selection and arrangement of the modes and prompts, and might have found sense of fair as to number 1, and there's a mismatch, and until the other side shows that sense of fair went with the infringement thing, they can't support that work. Your Honor, if I understand the question correctly. I'm not sure I understand it. Let me refer you to two places, Your Honor.  There's no evidence in the record that could possibly rise to the level of substantial evidence that our modes or prompts, our help descriptions, our command responses, or the compilation of compilations. The other four compilations are essentially abandoned here. There's no possible evidence that could show that anything dictated any of the other four compilations. And more important, Arista has really abandoned that at this point. We say in the gray brief at footnote 4, we note that you can look through the red brief in vain, and you're not going to find any claim that, oh, well, maybe the jury found sense of fair based on the modes and prompts. So as this case comes to you, we're really in compilation number 1, the district court's instruction 39, compilation number 1, compilation of multi-word commands. And there I think it's just dead to rights that this is not a sense of fair case. You know the standard. Obviously, it's restated in Oracle v. Google, dictated by external factors outside our creativity at the time of creation. And nothing in the protocols dictated our selection and arrangement of the commands. Judge Taranto, I want to be sure I answer your question about do we win if it's selection only. And the answer is yes, we win if it's selection only. I don't think that's the way the case was tried. The case was tried on selection and. But we win if it's selection only of the multi-word commands that we placed across the hierarchies. If it's the selection of the commands, selection of the commands, not of types of commands. The commands were all original expression. Our switches hadn't existed when we wrote the CLI originally. Where in either of your two briefs do you identify that the selection of commands, it would give several examples of the selection of commands as opposed to their distribution across different hierarchies. So, Your Honor, the selection, it's again Gray-Brief 14 to 15 and Note 5. And we've laid out for every single protocol the district court referenced that the selection of a command, the selection of an OSPF command, the way we wrote it, the command, not the type of command, was original to us. If you look at the protocols, the protocols have glossaries. They list some terms. We chose some of those terms to put in our commands and we didn't choose others. Sometimes we chose to take commands, sorry, take terms that were in the glossaries and then hyphenate them. The district court errs at page A10. There's a simple typographical error when the district court says that we took terms from the IGMP glossary at Appendix 10, Line 14. Unfortunately, autocorrect turned IGMP into GIMP at Lines 14 and 15. But if you actually go to the Internet Group Management Protocol cited in the district court, if you go to Exhibit 6877, which the district court cites there, and I'll tell you the exact pages in the appendix where you'll find the glossary, it's Appendix 57, 544, and 45, and in the actual IGMP, Internet Group Management Protocol glossary, it lists terms that the district court hyphenates here without hyphens. So, for example, the IGMP glossary had, as four separate words, last member query interval. It didn't hyphenate them here. Hyphenating them is an organizational choice that our engineers made. In other words, rather than creating a query sub-hierarchy and having nodes coming off it that queried interval, queried count, and so forth, our engineers hyphenated those words together, so IGMP query interval becomes one word. It's non-extensible. Those are the organizational choices, Your Honor. We're putting terms that are familiar. I don't dispute that IGMP, as an acronym, or the term query interval as a defined term within the IGMP, we put those terms in our commands, but what was original and protected was the way we arranged the multi-word commands to include those terms in different sequences, different taxonomies, across different hierarchies. You've crossed this bridge in the SSO portion of the Oracle decision. You held that Oracle had copyright protectability in the structure, sequence, and organization of the APIs there. In a way, our case is even simpler because we're about a text-based command line interface. We're about human-to-machine communication, not machine-to-machine communication, so there's absolutely no mechanical or programming constraint on how we wrote these. We could have written any number of combinations of these multi-word commands and distributed them differently across the hierarchies. That's the originality, and that's not Sen's affair. Your Honor, I realize I'm going way over my time. Why don't you sit down, and we'll restore your rebuttal. I just want to say we have an alternative argument that you may not reach any of this if you find that verbatim copying is not eligible for Sen's affair at all under the Apple-Microsoft case, and that's an alternative ground for affirmance that would elide all these questions, and we didn't waive it in our 58. Thank you very much, Your Honor. Good morning. Good morning, Your Honor. May it please the Court. Bob Van Nest. I'm here on behalf of Arista Networks. The jury heard substantial evidence supporting its Sen's affair verdict. As I think the panel knows, the jury was instructed... Help us understand whether you agree that her theory about the overlap in these command words among the hierarchies is protectable subject matter under the copyright law. Do you agree with that? Is your position that we don't know whether the jury adopted that? What is your position about that? Three points in response to that, Your Honor. First, we spent a lot of time on arrangement, but arrangement was never presented to the jury. This argument about arrangement, why? Because the commands they claim were copied were not arranged in any particular way. The only arrangement that was ever shown... Let's start with basics. Okay. You understand what her argument is, probably. I do. Much better than I do. Is her argument that this is protectable subject matter correct? No. Okay. Why not? Not in this case, because after hearing two weeks of testimony, Judge Freeman issued a dissection order and a jury instruction, which put out of play almost all elements of the user interface. It put out of play any single multi-word command, any command hierarchy, any method of grouping commands under a common word, which would cover what she's now arguing. What she's saying is that it didn't preclude the combination of two or more hierarchies being protectable subject matter. That was not the result of the analytic dissection opinion. Do you agree with that? I don't. I don't, because the judge not only eliminated the any command hierarchy, but also any grouping of commands under a single word or topic. Where is that? Is that in Instruction 39? It is. It's in 1339, Your Honor, Appendix 1339. In Instruction 39. Is it in Instruction 39, the grouping apart from the hierarchy? Yes. It's item three. What page are you on? I'm on page 1396 of the appendix, Your Honor. This is Instruction 39. Item two is any single word, multi-word command. Judge Taranto, it's item three. The idea or method of grouping or clustering commands. I'm not sure I would read that to say any grouping, any choice of a particular grouping, but rather the idea or method of grouping as an organizational principle. Well, maybe it's not crystal clear, but I can say with confidence that this idea of arrangement was never even presented to the jury. I'm sorry. What do you mean by that, since the word appears in 39? What I mean, Your Honor, is that the case was not tried based on arrangement. Let me back up a little bit. I agree with Your Honor's interpretation, and I think everybody understood that selection and arrangement is a single thing. The copyright statute defines compilation as a collection that is selected, coordinated, or arranged. And Jury Instruction 33 in our set, which Cisco didn't object to, uses the disjunctive. They would have screamed bloody murder if the judge had said you jurors must find both selection and arrangement. That's not what was understood. What was understood was that since the Copyright Act defines compilation as a selection or arrangement, you need to show one or the other. Obviously, an anthology of poems that is selected can be copyrightable even if it's organized in alphabetical or chronological order. No court has said you must prove both. Selection and arrangement are a unitary thing. That's why we say — But if I understand what they're saying, is they're saying that there is selection here because they've selected particular words to use across different hierarchies. That's right. That's what they're saying. And what we're saying is that if that's the case, since they resisted a verdict form that would have required jurors to identify what compilation they found infringed, we have this black box and we don't know. So the presumption has to be in favor of the verdict. The verdict was sens affaire for the appellee. But how do you win, then, on sens affaire? Let's assume that that's correct, that the jury only had to find selection, and that their contention is that selection was shown because they've selected different terms to use in different hierarchies. The overwhelming evidence from both our expert, their expert, and the lay witnesses, Your Honor, was that the selection here was dictated by the choice of features you put in the switch. In other words, John Black, our expert, testified that when the manufacturer decides which of these industry protocols its switch is going to support, then the set must contain the commands necessary to carry that function out. So the commands aren't created in a vacuum. They're created only in response to your selection of what features you're going to have, and that once the manufacturer decides that, let's take OSPF. But it doesn't dictate the terminology that you use. Well, what jurors understood, Your Honor, from the examinations of Mr. Black and particularly Mr. Almaroth, their expert, was that virtually every command, and I recognize commands aren't protectable, but every single command came directly out of a protocol that the industry had approved for use. So the industry says, if we're going to do a border gateway protocol, here are the elements of that that you want to implement. Now, you don't have to implement all of them, but whatever ones you choose to implement, there must be a command in your CLI set to do that, and the commands virtually every one, Your Honor. But does the industry protocol, let's look at page 10 of the blue brief, does the industry protocol tell you to have these commands that are displayed in that box in the hierarchy there? Yes, in this sense. The OS, the IGMP protocol, which is at 57544, has a definitional section. And that definitional section lists the terms that correspond to the functions. They took these verbatim. What page is that on? This is on page of the Joint Appendix 57544 and 57545. And I think it's in volume 3, 57544 and 57545. We cross-examined Dr. Almaroth. Wait, wait, wait, hold on. Yep. So, for example, Dr. Almaroth, their expert testified, IGMP is a well-known protocol, and all the network engineers know that IGMP means Internet Group Management Protocol. Query interval, 8.2. 8.6, start-up query interval. 8.7, start-up query count. Okay, is it possible to take this left-hand box on page 10 of the blue brief and relate it to these industry standards? Is there a show standard here that helps us? All of these terms, spanning tree, storm control, TACAS, TRAC, etc., they all come from various protocols that were shown to the jury. For example, one thing— Are you able to show us which protocol corresponds to that box? They didn't prove every one of those, and neither did we. What I can show you and list for you is that there were at least half a dozen protocols discussed with Dr. Almaroth, and those include the IGMP protocol. The IGMP protocol in particular is not particularly relevant to the blue brief page 10 thing. Is that right? I don't see an IGMP application there. That's right. Is there some other joint appendix protocol that we might look at to see some of the words that appear on page 10? For example, you could look at the IP protocol. The IP protocol is—excuse me, the OSPF protocol is 51808. The word router is found there. I believe we've got a router. But the point is virtually all of these terms come directly from protocols. So in other words, when there's a duplication between the left-hand box and the right-hand box of the word show, what you're saying is that the industry protocol requires the use of the word show to correspond to that function in each of those hierarchies. That's right. Show is a more common phrase, Your Honor. But the point is that when you get past something like that that was widely used before Cisco and you get to IGMP or you get to SNMP or you get to these individual words, they all come right out of the protocol. And what we showed— Like the spanning tree, for example. Yes. So the spanning tree, the protocol tells you to use the terminology spanning tree to describe a particular function. The protocol describes the function as spanning tree. That's right. The protocol itself describes the function as spanning tree, and they adopted it directly from the protocol into their set of commands. So our point is— So the idea is that sent a fair applies because it tells you that both within a particular hierarchy, and across hierarchies, you have to use the same terminology. That's right. It applies in this sense, Your Honor. It's two steps. Once the designer of the system—these are network switches, and they all have to work together, and the network engineers are running them as a group. So once the manufacturer decides I'm going to support the spanning tree function, there must be a command that says spanning tree because that's what the protocol calls for. And that was testified to by Dr. Black, by Anthony Lee, a former Cisco engineer, who said you must have commands in your set to control the features in your switch. Dell—we presented a witness from Dell, Gavin Cato, who testified if your switch supports a networking protocol, then the basic commands you need have to be there in the switch. It was essentially undisputed. Even Dr. Almaroth conceded after the sixth or seventh protocol that we reviewed with him on cross-examination that virtually all of the commands up and down in all these various sets were directly from the protocol. Now, I want to take a separate slightly— So what he's saying is that the fact that spanning tree, for example, appears in the left-hand box and the right-hand box to describe these particular functions is dictated by the network protocol. There's not creativity in using that particular term both for the left-hand box and the right-hand box. That's right. And that's what we argued to the jury, is that it was compelled by the selection of the features, and the features are all set forth in network protocols, and the protocols define the features in the same terms that Cisco used. Now, I want to make another point, which is related. Judge Toronto asked about selection and arrangement. And as I pointed out, the selection and arrangement issue never arose in this sense. Everyone assumed that either one would be sufficient, just like an anthology of poems. And that's why the compilation definition in Jury Instruction 33 says selection or arrangement. They would have complained like crazy if Judge Freeman had told jurors, you must find both selection and arrangement. Why? I don't know what the difference is, whether it's selection or selection and arrangement. I mean, it seems to me that they're making the same argument, whichever term you use, whether you use selection or selection and arrangement. They're conceding. Wait. What they're saying is that among hierarchies, there's the use of the same terminology to describe the same function, and that there's originality in that. I think what they're conceding, Your Honor, is that this ---- Can you help me answer what I just said? I don't understand their argument the way you do. I think what they're saying is we concede that selection alone could ---- we concede that selection may have been shown by them as the basis for the verdict, and we concede that selection comes from these protocols once you decide what feature. I think what they're saying is we never proved the arrangement and that you have to prove both in order to sustain our sense of fair verdict. The problem with that, you already anticipated, which is they never proved any particular arrangement either. Why? Because the commands that they're complaining about were not arranged in any particular way. They come from four separate operating systems, the aristic commands. They come from many different hierarchies. They never put up a chart in opening, closing, or anywhere and said here are ---- here is our compilation of arranged things, and they're arranged the same way because there was no evidence. And the only place these commands are ever actually arranged where jurors can see them are in the manuals. And the manuals were explicitly found not infringed by the jury. Can you address this point to the pages in the gray brief that Ms. Sullivan featured? Footnote 5.  All that, Your Honor, is attorney argument. It was never presented to the jury. But it was ---- Maybe I misunderstood. I understood that that footnote said, and I think Ms. Sullivan said, if you look at the IGMP terminology, we actually put a little bit over here and a little bit over there, and that is what ---- at least that is what we mean by arrangement. We could have put it all in one place. Sure. And so even stipulating for argument's sake that we ---- that the selection of all the terminology across different hierarchies is an arrangement that was not driven by anything. That ---- I'll assume that for sake of argument. They never proved that as a basis for infringement. That's one of the basis that we moved for judgment of a matter of law on the infringement verdict. They never proved that that arrangement, whatever they now say it was, because they never laid that out for the jury, but they also never proved that that arrangement was copied. That's the point, is that they never put up a chart like on pages 10 and 11 to show here's our arrangement, here's ERISTA's arrangement. They're the same. That was never proven. It was never even attempted to be proved. Why? Because the commands they were accusing do not exist anywhere outside the lawsuit. They were selected by the lawyers to present as the basis for their claim. They're from different operating systems. They're from different ---- If I understand correctly, you're saying that there wasn't any proof that the hierarchy organized the way it is. For example, in the left-hand box on page 10 was copied. Right. What was copied was that somehow, I guess there are maybe 15 different commands in here. That's right. You copied show version. You copied show SNMP group. Each one of those was copied, but not in this format. Exactly right. And that's why at page ---- it was a turning point in the trial during the dissection hearing. It's not just that the judge said hierarchies are out. They abandoned any effort to prove hierarchies as protected material. At page 1339 of the dissection order, Judge Freeman notes, and they don't complain about it, they abandoned it. Why? Because they couldn't prove that a hierarchy or anything like it was copied. Why? Because these commands, as Your Honor just noted, the commands are not protectable. The hierarchies are not protectable, and they had no proof that any so-called arrangement that they're now arguing was copied. And they didn't even make the argument to the jury. You can read the opening, the closing, and everything in between. There was never an argument that what Arista copied is this arrangement that they have ginned up in their reply brief, in the reply brief, not in the opening brief. It's nowhere in the record. All they've done is taken protocols that were in the record and made an attorney argument now, but they have no evidence whatsoever. And that's why we asked Judge Freeman to throw the verdict out. We said there wasn't any evidence of any of this. And after the dissection order, there was no compilation shown to the jury that could have been the basis for infringement. She didn't deny our motion. She said it's moot. I'm going to support the verdict. And what she said was, because we now have a black box verdict, I can assume that the jurors found some minimal selection of some commands as original. But as to those, there's overwhelming evidence of sens affaire from the testimony of the experts, the networking engineers, the people that designed the systems, that these things are dictated by your choice of features in your switch and the protocols that define and describe those. And so for that reason, the verdict below, the judgment should be affirmed. I'm happy to take further questions from the panel. Thank you. Three quick points, Your Honor. First, the case was tried on arrangement. I was at the entire trial, too. It was tried on arrangement because that's what the district court let us do. She tied one hand behind our back and it was tried on arrangement. I'd refer Your Honors to the blue brief at 13-14 where we have listed all the cases on arrangement. 13-14 lists just some of the evidence about, if you look at blue brief 13, middle of the page, testimony about how we organized it. The aesthetic is the way the CLI is organized. Our experts discussing whether to place a command in the show or IP hierarchy. You can read the evidence at 13-14. The case was tried on arrangement. It was instructed on arrangement. Arrangement was what the district court allowed us to show, and we showed arrangement across hierarchies. Second, the features did not dictate the terminology. Judge Dyke, you asked that in a question, and I'd like to answer that question correct. The features did not dictate the choice of any terminology. I'd refer Your Honors to just four. The network protocol did tell you, maybe not dictate, but did suggest the use of particular terminology. In other words, if we look at this left-hand box and we found the right industry protocol, show and version, show version would appear as a suggested terminology to describe a particular function. Is that correct? Terms, yes. Arrangement, no. And this is the core of the case, Your Honor. Protocols may have dictated individual acronyms. But did you prove that the arrangement, for example, shown in the left-hand hierarchy was copied by them, or just that the same terminology was used? Your Honor, I would respectfully suggest, I'm trying to give you a road map through the case. You should please look at the. Answer the question. If you look at 51-105. Did they copy the type of arrangement that's shown in the left-hand box, or did they just copy the use of the same terminology? They copied our commands, three- and four-word commands. So if you were looking at the example on page 10, they copied show, if you look at the box on the left, show, spanning tree, MST configuration. Okay, and they say that they copied that, but they didn't arrange it the way it's shown in your left-hand box, right? No, Your Honor. Here's the key. When they copied our commands, the commands embody our arrangement. Our arrangement was to put them in this order, show, spanning tree, MST configuration. What was original, and if you look at the evidence in Blue Brief 13-14, you'll see ample evidence to support our verdict. Remember, for infringement, all inferences are taken in favor of Cisco's verdict of infringement. You will see that the commands were created by the engineers through organization of the hierarchies. Now, Your Honor, my friend. But if you were an engineer approaching this, because of the industry protocol, you would use the terminology show, spanning tree, MST configuration to describe a particular function. No, Your Honor. That's not correct. You could have said show. You could have said display. Not could have. I'm talking about what was suggested. No, Your Honor. I promise you, go to the glossaries in the protocols, and you will not find a single direction about how to arrange the terms in the glossaries. Nothing in IGMP says you must have an IGMP hierarchy that begins with IGMP as the root. And we didn't. IGMP is not a root term in any of our hierarchies. We put it in the show hierarchy. We put it in the IP hierarchy. We put it in different hierarchies. Nothing in the protocol might have told us use the term IGMP, but it didn't tell us where to put it across the hierarchies. I thought that the suggestion was that the industry protocols did tell you about what combinations of words to use to describe particular functions, so that if you look to the right protocol, you'd find something that said show version, and it would describe what function that was and suggest that you use that terminology for that function. Your Honor, that is the heart of the case, and that is 100% incorrect. Incorrect. That's why the JMAL order is incorrect on page A10. If you go to the glossaries for the protocols, they say nothing about the arrangement of the term. We could have done a query. We could have taken IGMP, which has four query terms in the appendix, and we could have created a query hierarchy, but we didn't. We created non-extensible hyphenated last member query count terms. So, Your Honor, the core of this case, let me say it as simply as I can. If you find that the use of a single industry protocol term, like OSPF or IGMP, or a single term from a protocol glossary, if you find that putting those into a computer user interface is enough to create sense of fare, you will have destroyed copyrightability for user interfaces, and you would have done through the back door exactly what you said my friend couldn't do through the front door in Oracle versus Google. If we're copyrightable in our arrangement, which is all the district court allowed us to prove and the jury agreed with us and all inferences should be drawn in our favor, they had to prove sense of fare as to the arrangement, too. And nothing in the protocols tells you how to arrange them. I promise you, Your Honor, go to our evidence. The glossaries list isolated terms. If they're right, let's assume that my understanding of what they're saying is correct, that the industry protocol will tell you to use show version for a particular command, a particular function. Let's assume that that's correct. Then there's no originality in using that particular terminology, right? Your Honor, there would be no originality if the industry protocol dictated the arrangement, but the industry protocols did not dictate the arrangement. Don't take it from me. Take it from ARISTA's expert, Dr. Black, who said, and this is a crucial admission at 12.2.10, none of our copied commands in the order they were written existed before we wrote them. That means no protocol ever told us we had to write our command in this order referring to all the hierarchies that comprise the command. And I want to refer, Your Honors, to a very important... I don't know what that testimony means. I mean, that could mean that the box that's shown on page 10 did not previously exist in the industry protocols, and I don't understand your opponent to be saying otherwise. But what they are saying is that when you make the combination shown in the box, that that is suggested by industry protocol. Your Honor, the combination is not suggested by the industry protocol. I promise you. This is why the district court erred on pages 9 and 10. The show version is not set forth... It's not set forth. It's not set forth in an industry protocol, Your Honor. The term show is in an industry protocol. The term IPv6 is an industry protocol. IGMP has terms like start query interval in the glossary. But the crucial thing is at the time we created our CLI, no protocol told us how to arrange things in the hierarchy. There's a couple of crucial places in the record I want to refer, Your Honors, to. First of all, my friend referred to A1339. That's the filtration order. And he said hierarchies were out of the case. They are not out of the case. The crucial... He said it was a turning point in the trial, and indeed it was, and it supports our case for reversal. The district court said that Cisco may, with Arista's agreement at 1339, show that the process for creating commands was related to each command expression's organization in the hierarchies. And that's what we set out to prove. And that's what we proved and the jury found for us. Now they come in and they say, oh, that was dictated by the protocols. But there's a disconnect. The protocols didn't tell us how to arrange these commands. And I want to refer you to four key pieces of evidence that I commend to the court. Mr. Duda, Arista's chief technical officer, admitted that you could perform the same functions with a different set of command line interfaces. He said it's technically achievable. And by the way, 20% of Arista's customers use Linux. It's technically achievable, but that's not the question. The question is whether it's suggested by the industry protocol. Suggested isn't enough. Dictated means practically indispensable. That's clear Ninth Circuit law. So you agree that the industry protocol suggested that? I wouldn't. The industry protocol said nothing about how you put your sequence in. The industry protocol didn't say you must have an OSPF hierarchy, with OSPF as the root term, and we don't. We pop OSPF into seven different hierarchies at different places in the order. That's the crucial, that's the key to the case. The only part of the district court's case, the district court's opinion. I'm sorry, I'm going way over my time, Your Honor. We're going to let you finish your month on that. To finish, I want to commend to Your Honor Appendix 54-390. It's a simple page, Your Honor, where you can see it's HP's user manual. There's three columns that show you you can do the same function three different ways. We had copious evidence that you could do things different ways. Mr. Schaefer from Juniper said, I did it differently at Juniper. I arranged my commands differently. We had Mr. Venkatrampan from HP, through whom page 54-390 was admitted, and he said, oh, yes, different engineers in the same company could arrange the commands across different hierarchies in different ways. The left-hand column and the middle column on page 54-390 are two different HP command lines in the same company. Okay, so look at that page. It happens to use the term that I was referring to, show version. Right, Your Honor. ProVision uses show version, Comware uses display version, and Cisco uses show version. But the question is, does the industry protocol suggest that show version is the right term? It doesn't suggest it, and it certainly doesn't require it. No, it doesn't require it, and nobody seems to be arguing. But to suggest it, that's a different question. Your Honor, the key to this case is it's the order that matters, not the— the word show may—it may suggest that you use the word show. That does not dictate that you put show in any particular hierarchy, and this illustrates that you can do it three different ways. It was admitted by Arista's own witnesses that you could arrange things in different ways. That's why there's no sense of fair here. So, Your Honor, if there are no further questions, we respectfully suggest that if you don't reverse here, you're letting Arista do through the back door what you said Google could not do through the front door in Oracle v. Google, and that is to hold that effectively user interfaces are uncopyrightable. We respectfully suggest that you reverse and remand for further proceedings. Thank you, Your Honor. Thank you. Thank both sides, and the case is submitted.